UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 25-10508-DMG (Ex)** | | Date | May 21, 2026 |
|---|---|---|---|---|

| Title | ***Marta Melendez v. Smurfit Kappa North America, LLC, et al.*** | Page | **1** of **11** |
|---|---|---|---|

| Present: The Honorable | DOLLY M. GEE, CHIEF UNITED STATES DISTRICT JUDGE |
|---|---|

| DEREK DAVIS | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:  IN CHAMBERS—ORDER RE PLAINTIFF'S MOTION TO REMAND [12]**

**I.**
**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Marta Melendez, a California resident, has worked for Defendant Smurfit Kappa North America, LLC ("Smurfit") since April 18, 2022.  Declaration of Nicky Jatana ("Jatana Decl."), Ex. A ("Complaint") at ¶¶ 1–13 [Doc. # 1-1]; Declaration of Nicole Humphrey ("Humphrey Decl.") at ¶ 14 [Doc. # 1-2].  Smurfit is a packaging and paper products company incorporated in Delaware, with its principal place of business and headquarters in Texas. Humphrey Decl. at ¶¶ 5–6.  Melendez has held the positions of a Post-Gluer Stacker and a Strapper, both of which are "production" positions.  *Id.* at ¶ 12.  All hourly non-exempt production employees, maintenance employees, warehousemen, and truck drivers are represented by Teamsters District Council 2, Local 388M, and were covered by a collective-bargaining agreement from September 18, 2021 to December 24, 2024.  *Id.* at ¶ 10, Ex. A.  When the first CBA expired, a second CBA covered these employees from December 24, 2024 to December 24, 2025.  *Id.* at ¶ 11, Ex. B.

On September 18, 2025, Melendez filed a putative class action Complaint against Smurfit in Los Angeles County Superior Court.  Melendez alleges the following state law causes of action: (1) failure to pay minimum wage for all hours worked; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to indemnify necessary business expenses; (6) failure to pay wages of discharged employees; (7) failure to provide and maintain accurate wage records; and (8) and unlawful business practices in violation of California Business & Professions Code sections 17200 *et seq.  See generally* Compl.

Melendez brings this action on behalf of the following proposed class:  "All persons who worked for any Defendant in California as an hourly, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk DD |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 25-10508-DMG (Ex)** | Date | May 21, 2026 |
|---|---|---|---|

| Title | ***Marta Melendez v. Smurfit Kappa North America, LLC, et al.*** | Page | **2** of **11** |
|---|---|---|---|

notice to the Class is sent." *Id.* at 15.[1]  Melendez served Smurfit with the Summons and Complaint on October 1, 2025.  Jatana Decl., Ex. B.  On October 31, 2025, Smurfit timely removed the action to this Court, invoking jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") and federal question jurisdiction under 28 U.S.C. section 1331.  [Doc. # 1 ("NOR").]

Before the Court is Melendez's Motion to Remand, filed on December 3, 2025.  [Doc. # 12 ("MTR").]  The motion is fully briefed.  [Doc. ## 13 ("Opp."), 14 ("Reply").]  Melendez argues that Smurfit:  (1) failed to establish that the amount-in-controversy is above $5,000,000 as required under 28 U.S.C. section 1332(d)(2); and (2) failed to establish federal question jurisdiction because her claims are not preempted by Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. section 185(a).

For the reasons set forth below, the Court **DENIES** Melendez's MTR because the Court has jurisdiction under CAFA.

## II.
## LEGAL STANDARD

A defendant may remove an action brought in state court to a federal district court where the action is pending if the district court has original jurisdiction over the action.  28 U.S.C. § 1441(a).  The party "seeking removal has the burden to establish that removal is proper" and the "burden of establishing federal subject matter jurisdiction." *Id.*; *see also Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944 (9th Cir. 2009) (citing *Toumajian v. Frailey*, 135 F.3d 648, 652 (9th Cir. 1998)).

CAFA confers district courts with jurisdiction "over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (citing 28 U.S.C. § 1332(d)). For the diversity requirement, courts determine whether an action is removable based on the complaint as it existed at the time of removal.  28 U.S.C. § 1332(d)(7); *Doyle v. OneWest Bank*, 764 F.3d 1097, 1098 (9th Cir. 2014).

---

[1] All page references herein are to page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 25-10508-DMG (Ex)** | Date | May 21, 2026 |
|---|---|---|---|

| Title | *Marta Melendez v. Smurfit Kappa North America, LLC, et al.* | Page | **3** of **11** |
|---|---|---|---|

## III.
## DISCUSSION

The parties do not dispute that there are at least 100 members in the putative class and the minimal diversity requirement is met. *See* NOR at 4–7; *see generally* MTR (objecting to CAFA jurisdiction only on the basis that Defendant failed to show requisite amount in controversy).[2]  The only dispute is whether Smurfit has adequately shown by a preponderance of evidence that the amount in controversy exceeds $5 million.[3]  Smurfit asserts that the amount in controversy, including attorneys' fees, is $6,075,343.55.  NOR at 19.  Excluding attorneys' fees, Smurfit estimates the amount in controversy is $5,596,055.87.  *Id.*  Melendez argues that Smurfit's calculations are impermissibly exaggerated and unsupported by evidence.  *See* MTR at 15–23.

Although Smurfit was not initially required to submit evidentiary submissions to prove the amount in controversy in its NOR, now that Melendez challenges the estimate, Smurfit must support its assertions with competent evidence.  *Arias v. Residence Inn*, 936 F.3d 920, 925 (9th Cir. 2019).  In other words, when a plaintiff contests, or the court questions, the defendant's allegation, "[b]oth sides submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).  The party seeking removal bears the burden.  *Ibarra*, 775 F.3d at 1197.  The Court "may 'require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'"  *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).

"A removing defendant need not present evidence of what its ultimate liability will be[.]"  *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025).  A removing defendant "is permitted to rely on 'a chain of reasoning that includes assumptions' to calculate the amount in controversy."  *Id.* (quoting *Arias*, 936 F.3d at 925) (internal quotation marks and citation omitted).  Although these assumptions "cannot be pulled from thin air . . . they can be founded on allegations of the complaint and do not necessarily need to be supported by evidence."  *Id.* (internal quotation marks and citations omitted).  "The district court's task is simply to determine if the defendant's 'reasoning and underlying assumptions are reasonable.'"  *Id.* (quoting *Jauregui v. Roadrunner Transp. Serv., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022)); *see also Harris v. KM Industrial, Inc.*, 980

---

[2] Defendants have established that there are over 100 members in the putative class.  *See* Humphrey Decl. at ¶ 16 (identifying 205 total non-exempt hourly employees during the relevant period).  Additionally, the parties are minimally diverse.  Melendez is a "California resident," Compl. at ¶ 7, while Smurfit is incorporated in Delaware with its principal place of business in Texas.  Humphrey Decl. at ¶ 6.

[3] Melendez's Complaint does not include an amount in controversy.

**CIVIL MINUTES—GENERAL**    Initials of Deputy Clerk DD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 25-10508-DMG (Ex)** | Date | May 21, 2026 |
|---|---|---|---|

| Title | ***Marta Melendez v. Smurfit Kappa North America, LLC, et al.*** | Page | **4** of **11** |
|---|---|---|---|

F.3d 694, 701 (9th Cir. 2020) ("The district court should weigh the reasonableness of the removing party's assumptions, not supply further assumptions of its own.").

Smurfit submitted a declaration from its Senior Regional Human Resources Manager, Nicole St. Amant Humphrey. Humphrey has "access to personnel and payroll records" maintained by Smurfit and reviewed relevant records to prepare her declaration. Humphrey Decl. at ¶¶ 9, 14. Humphrey attests that Melendez's current rate of pay is approximately $23.08/hour, and her overtime rate of pay is approximately $34.62/hour. *Id.* at ¶ 14. Melendez is paid on a weekly basis. *Id.* According to the records, Smurfit employed a total of 205 non-exempt hourly employees in California between September 18, 2021 and October 27, 2025, which adds up to around 26,706.42 workweeks. *Id.* at ¶ 16. The average hourly rate of the 205 employees is $28.35. *Id.* Approximately 66 non-exempt hourly employees who worked for Smurfit between September 18, 2022 and October 27, 2025, were separated or terminated. *Id.* at ¶ 17. Lastly, between September 18, 2024 and October 27, 2025, Smurfit employed a total of 123 hourly non-exempt employees in California and issued around 6,743 wage statements to those employees. *Id.* at ¶ 18.

Melendez does not challenge the figures summarized in Humphrey's declaration. Instead, Melendez attacks the estimated frequency of violations used in Smurfit's calculations. In a wage and hour case, such as this one, "it makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the *alleged* violation rate—because the defendant likely believes that the real rate is zero . . . ." *Perez*, 131 F.4th at 808 (emphasis in original). "[A] CAFA defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint." *Id.* If the defendant's interpretation of the complaint is unreasonable, the defendant must provide some other evidence to justify the violation rate. *Id.* at 809. If the defendant's interpretation of the complaint is reasonable, the defendant is not required to submit evidence. *Id.* Moreover, if one possible violation rate is reasonable, this does not "automatically render" other possible violation rates unreasonable. *Id.* at 810. If the plaintiff believes a particular violation rate is "*more* reasonable" than another, she may argue so, and the Court will "weigh[] the evidence and arguments" to decide which assumption is "more appropriate." *Id.* (citing *Jauregui*, 28 F.4th at 996) (emphasis in original).

The Court addresses the reasonableness of Smurfit's estimates for each category below.

**A.     Unpaid Minimum and Overtime Wages**

Melendez alleges that Smurfit "maintained a systematic, company-wide policy and practice" of failing to pay employees for all hours worked, including minimum wages and overtime wages. Compl. at ¶ 4. Melendez was "typically scheduled to work at least 5 days in a workweek,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 25-10508-DMG (Ex)** | Date | May 21, 2026 |
|---|---|---|---|

| Title | *Marta Melendez v. Smurfit Kappa North America, LLC, et al.* | Page | **5** of **11** |
|---|---|---|---|

and typically in excess of 8 hours in a single workday." *Id.* at 13. Both "Plaintiff and the Class were required to work off-the-clock, and uncompensated." *Id.* at 12.

Based on these allegations of a "systematic, company-wide policy and practice," Smurfit assumes a violation rate of two unpaid hours per work week. Opp. at 11–12. Smurfit cites to numerous district court cases finding two hours per week of unpaid overtime was a reasonable assumption where plaintiffs allege a pattern and practice. *Id.* at 12. Smurfit makes the following calculation: $28.35/hour x 26,706.42 workweeks x 2 hours per week = **$1,514,254.01**. NOR at 12, 19. Melendez contends Smurfit's assumption of two hours per week, i.e., a 40% violation rate, is "pure fiction." MTR at 15. Melendez urges the Court to use a 20% violation rate, citing district court cases where such a rate was found reasonable based on "policy or practice" language in the complaint. *Id.* at 15–16.

The Court finds that whereas here, the Complaint alleges a *systematic* policy and practice of failing to pay employees for all hours worked, a 40% violation rate is reasonable. *See Perez*, 131 F.4th at 808 ("[A] CAFA defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint."). Such language is conducive to a reasonable inference that the violation rate is more than 20%, but less than a 100%. *See id.* at 809 (reiterating conclusion from *Ibarra* that "pattern and practice" does not support a 100% violation rate); *see also Sanchez v. Abbott Laboratories*, No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057, at *4 (E.D. Cal. June 30, 2021) (collecting cases where a violation rate between 20% and 60% was found to be reasonable where complaint alleged a "pattern and practice").

In sum, Smurfit's estimate of **$1,514,254.01** for failure to pay minimum and overtime wages is reasonable.

**B.     Failure to Provide Meal Breaks and Rest Breaks**

Melendez alleges that Smurfit "maintained a systematic, company-wide policy and practice" of failing to provide employees with timely and duty-free meal periods and failing to pay an additional hour's pay for each workday where a meal period violation occurred. Compl. at ¶ 4. In a different portion of the Complaint, Melendez alleges "Plaintiff and the Class were sometimes interrupted during meal breaks without compensation." *Id.* at ¶ 15; *see also id.* at ¶ 16 ("Defendants sometimes, but not always, required Plaintiff and the Class to work . . . without providing 30-minute, continuous and uninterrupted, duty-free meal period[.]"). Melendez also alleges that "Defendants *regularly* failed to provide Plaintiff and the Class with both meal periods as required by California law." *Id.* at ¶ 51 (emphasis added).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 25-10508-DMG (Ex)** | Date | May 21, 2026 |
|---|---|---|---|

| Title | *Marta Melendez v. Smurfit Kappa North America, LLC, et al.* | Page | **6** of **11** |
|---|---|---|---|

As for rest breaks, Melendez uses an assortment of language to characterize Smurfit's failure to permit employees to take timely and duty-free rest breaks. *See*, *e.g.*, *id.* at ¶ 4 ("systematic, company-wide policy and practice"); *id.* at ¶ 17 ("Defendants sometimes, but not always" failed to provide appropriate rest period); *id.* ("Defendants also did not adequately inform Plaintiff and the Class of their right to take a rest period."); *id.* ("Defendants cannot demonstrate that Plaintiff and the Class took rest periods during the middle of *each* work period.") (emphasis added); *id.* ("Accordingly, Defendants' policy and practice was to not authorize and permit Plaintiff and the class to take rest periods[.]").

Using Melendez's allegations, Smurfit asserts it is plausible that Plaintiff seeks to recover two meal period premiums and two rest period premiums per pay period for all class members during the relevant time period. NOR at 12–13. Smurfit makes the following calculations:

Meal premiums: $28.35/hour x 26,706.42 workweeks x 2 hours per week = **$1,514,254.01**
Rest premiums: $28.35/hour x 26,706.42 workweeks x 2 hours per week = **$1,514,254.01**

Melendez objects to Smurfit's calculations on a couple grounds. First, Melendez argues that Smurfit's assumed violation rate is unreasonable because Smurfit offers no evidence to support its assumption and "the Complaint only alleges that Defendant 'sometimes, but not always' violated meal and rest break laws." MTR at 17. Melendez urges the Court to use a rate of one violation per week for each category, arguing it is a "far more reasonable" estimate. *Id.* at 19. Melendez does not submit any evidence to prove that her rate is more reasonable. For example, Melendez does not submit her own declaration stating that she experienced a lower rate of violation than the rate Smurfit asserts. *See Lopez v. Adesa*, No. 19-CV-1183, 2019 WL 4235201, at *3 (C.D. Cal. Sept. 6, 2019) (noting that "while not required, Plaintiff has not offered any better estimate of the alleged violation rate, despite the fact that she most likely knows at least roughly how often she was not afforded the required meal breaks."). Melendez argues that the language "sometimes, but not always" is synonymous with a "systematic, company-wide policy and practice." Reply at 9.

Second, Melendez contends Smurfit's estimate is "dramatically inflated" because under California Labor Code section 226.7, an employer is required to provide only one additional hour of pay per workday regardless of how many breaks were missed that day. MTR at 18. Smurfit does not allege, however, a 100% violation rate for each category, so it is not evident that Smurfit has double counted premiums for violations occurring on the *same* day.

For the same reasoning discussed above, the Court concludes that Smurfit's assumed 40% violation rate for failing to provide meal breaks and rest breaks is reasonable based on the language

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 25-10508-DMG (Ex)** | Date | May 21, 2026 |
|---|---|---|---|

| Title | ***Marta Melendez v. Smurfit Kappa North America, LLC, et al.*** | Page | **7** of **11** |
|---|---|---|---|

in the Complaint.[4]  *See Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (finding defendant's assumed 60% violation rate for meal period claim and 30 % violation rate for rest period claim reasonable based on allegations in complaint).  Accordingly, for purposes of calculating the amount in controversy, the estimate for failing to provide meal breaks is **$1,514,254.01** and the estimate for failing to provide rest breaks is **$1,514,254.01**.

**C.    Failure to Pay Wages at Separation (Wait Time Penalties)**

Melendez alleges Smurfit "failed to timely pay all final wages to Plaintiff when Defendants terminated Plaintiff's employment."  Compl. at ¶¶ 14, 19.  She alleges violations of Labor Code sections 201 and 202 on behalf of herself and "many other members of the Class[.]"  *Id.* at ¶¶ 63–64.  Labor Code section 203 provides that employers who fail to timely pay all earned wages upon termination are subject to a fine equal to the employee's normal wages for each day the wages are late, up to a maximum of 30 days.  Cal. Lab. Code § 203.  Melendez seeks to recover penalties up to the 30-day maximum.  Compl. at ¶¶ 65–66.

According to Smurfit, between September 18, 2022 and October 27, 2025, 66 putative class members were terminated, resigned, or separated from the company.  Humphrey Decl. at ¶ 17.  Smurfit argues a 100% violation rate and 30 days of wages for the 66 former employees is reasonable to assume, citing numerous district court cases in support.  NOR at 14–15.  With those assumptions, Smurfit makes the following calculation:  $28.35/hour x 8 hour day x 30 days = $6,804; $6,804 x 66 former employees = **$449,064**.  Melendez argues that Smurfit's assumed 100% violation rate is "wildly speculative" and that a 50% violation rate is "more reasonable."  MTR at 19–21.[5]

---

[4] Melendez misconstrues this Court's order in *Flores v. Element Materials Tech. Huntington Beach LLC*, No. CV 19-932-DMG (Ex), 2019 WL 2418748 (C.D. Cal. June 10, 2019).  While citing *Flores,* Melendez argues that "this Court has made clear, absent an evidentiary showing to the contrary, only 'one wage and hour violation per workweek may be utilized for the amount-in-controversy calculation.'"  Reply at 9 (quoting *Flores*, 2019 WL 2418748, at *2).  Melendez takes the Court's language out of context.  In *Flores*, the defendant relied on the complaint's language of "systematic pattern of wage and hour violations" to estimate that every putative class member's right to a rest period was violated every weekday, in every workweek.  *Flores*, 2019 WL 2418748, at *2.  The Court found that a 100% violation rate was unreasonable and noted that the defendant cited only to cases where courts used one violation per workweek.  *Id.*  Rather than wholesale endorsing the notion that *only* one wage and hour violation per workweek is reasonable, the Court simply summarized the authority presented in the defendant's briefing.  The Court went on to use a 20% violation rate, while only "[a]ssuming *arguendo*" that it was appropriate.  *Id.*

[5] Melendez provides no reasoning or evidence for why a 50% violation for wait time penalties is a "more reasonable" assumption.  *See id.* at 21.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 25-10508-DMG (Ex)** | Date | May 21, 2026 |
|---|---|---|---|

| Title | *Marta Melendez v. Smurfit Kappa North America, LLC, et al.* | Page | **8** of **11** |
|---|---|---|---|

The Court finds Smurfit's assumptions to be reasonable. First, because Melendez alleges categorically that Smurfit failed to timely pay *all* final wages, Smurfit's use of the maximum 30-day penalty is reasonable. *See Ford v. CEC Entm't, Inc.*, No. CV 14-01420 RS, 2014 WL 3377990, at *3 (N.D. Cal. July 10, 2014) ("Because no averment in the complaint supports an inference that [the unpaid wages] were ever paid, [plaintiff] cannot now claim class members may be awarded less than the statutory maximum."). Second, Smurfit's assumed 100% violation rate is reasonable because for wait time penalties, a 100% violation rate simply means that all terminated class members were not timely paid their final wages *as alleged*. This assumption is consistent with a "policy and practice" of failing to pay owed wages. Compl. at ¶ 4.

Accordingly, Smurfit's estimated **$449,064** for the amount in controversy relating to failure to pay wages at separation is reasonable.

**D.      Failure to Provide Accurate Wage Statements**

In her Complaint, Melendez alleges a "systematic, company-wide policy and practice" of failing to "maintain accurate records of the hours that employees worked" and "provide employees with accurate, itemized wage statements." Compl. at ¶ 4. The wage statements were allegedly inaccurate for a variety of reasons: (1) the statements did not show "all applicable hourly rates, and all gross and net wages earned (including correct hours worked, correct wages earned for hours worked, correct overtime hours worked, correct wages for meal periods [], correct wages for rest periods[,]"; (2) the statements did not show Smurfit's address as required by California law; and (3) the statements "failed to include the amount of available and unused sick pay in the wage statements." *Id.* at ¶¶ 20, 15.

Under Labor Code section 226(e), an employer may be fined $50 per pay period for the first such violation, and $100 per pay period for every subsequent violation, totaling no more than $4,000 per employee. *See* Cal. Lab. Code § 226(e). The claims are subject to a one-year statute of limitations. *See* Cal. Civ. Proc. Code § 340.

Smurfit asserts that between September 18, 2024 and October 27, 2025, it issued around 6,743.29 wage statements to over 123 putative class members. *See* Humphrey Decl. at ¶ 18. Smurfit assumes that each wage statement contained at least one of the alleged inaccuracies. Smurfit then makes the following calculation: $50 fine x 6,743.29 pay periods = $337,164.50. NOR at 16. Melendez challenges Smurfit's calculation on two grounds. First, Melendez argues that a 100% violation rate is "wildly speculative" and second, Smurfit fails to account for Labor Code section 226(e)'s statutory cap of $4,000 per employee. MTR at 19–21. Melendez proposes

---

CV-90                                     **CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk DD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 25-10508-DMG (Ex)** | Date | May 21, 2026 |
|---|---|---|---|

| Title | *Marta Melendez v. Smurfit Kappa North America, LLC, et al.* | Page | **9** of **11** |
|---|---|---|---|

a 20% violation rate instead and makes the following calculation: 123 employees x .20 violation rate = 24.6; 24.6 x $4,000 statutory damages = $98,400. *Id.* at 21.

Similar to the wait time penalties, since Smurfit can reasonably assume its alleged "systematic, company-wide policy and practice" of underpaying wages translate to about two overtime, meal break, and rest break violations each per week, every wage statement (covering a one-week period) likely contained an alleged error.[6] *See Wheatley v. Masterbrand Cabinets, LLC et al.*, No. 18-CV-2127, 2019 WL 688209, at *7 (C.D. Cal. Feb. 19, 2019) ("The Court has already found it reasonable to assume one hour of unpaid overtime and multiple meal and rest break violations per week per class member. Because Plaintiff's wage statement claim is 'derivative of [his] allegation that Defendant failed to pay him and the putative class members for all hours worked' [], Defendant may reasonably assume every wage statement contained at least one inaccuracy.") (citation omitted).

Smurfit uses the $50 fine amount to calculate all of the alleged violations, rather than applying the statutory $100 fine amount for subsequent violations. Smurfit's calculation, therefore, is lower than what is permitted by statute. Between September 18, 2024 and October 27, 2025, there were approximately 57 weeks. Properly applying Labor Code section 226(e), the Court makes the following calculations:

$50 (1st pay period) + ($100 x 56 subsequent pay periods) = $5,650 statutory fine per employee

$4,000 maximum statutory fine per employee[7] x 123 employees = **$492,000**

Accordingly, the Court finds that an estimated amount in controversy of **$492,000** for inaccurate wage statements is reasonable.

**E.      Failure to Indemnify Necessary Business Expenses**

Melendez alleges Smurfit "maintained a systematic, company-wide policy and practice" of "failing to indemnify employees for necessary business expenses incurred." Compl. at ¶ 4. For

---

[6] On top of the derivative allegations, Melendez also alleges that the wage statements failed to include Smurfit's address and available sick pay in violation of the Labor Code. Compl. at ¶¶ 15, 20. These types of alleged errors would not be likely to vary from one wage statement to another.

[7] Since the statutory cap per employee is $4,000 and the Court calculated $5,650 per employee for the relevant period, the Court applies the maximum of $4,000 in its calculations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 25-10508-DMG (Ex)** | | Date | May 21, 2026 |
|---|---|---|---|---|

| Title | ***Marta Melendez v. Smurfit Kappa North America, LLC, et al.*** | Page | **10** of **11** |
|---|---|---|---|

example, Smurfit failed to reimburse Melendez and putative class members for "the use of personal cellular telephones for work purposes." *Id.* at ¶ 18.

Smurfit assumes that each class member is owed $10 of reimbursement for each workweek. NOR at 16–17. Meanwhile, Melendez contends that an assumption of $10 per week is unreasonable and instead suggests $5 per week. MTR at 21–22. Neither party explains where their respective figure is derived from. Thus, the Court finds both figures—five dollars or ten dollars—are speculative and unsupported by any evidence. While the Complaint alleges a systematic practice, which provides context for the violation rate, there is nothing in the Complaint to glean the estimated amount of expenses per violation. In other words, neither party furnished evidence of the baseline cost of a cell phone plan, or average costs of any other type of business expenses incurred.

The Court therefore declines to apply either figure and assigns **$0** to the amount in controversy for failure to indemnify necessary business expenses. *See Jauregui*, 28 F.4th at 996 ("Where a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden.").

**F.      Final Calculation**

In sum, Smurfit's total exposure for Melendez's allegations of unpaid wages and penalties on behalf of the putative class amounts to:

| Cause of Action | Estimated Amount in Controversy |
|---|---|
| Unpaid Minimum and Overtime Wages | $1,514,254.01 |
| Failure to Provide Meal Breaks | $1,514,254.01 |
| Failure to Provide Rest Breaks | $1,514,254.01 |
| Failure to Provide Timely Wages at Separation | $449,064 |
| Failure to Provide Accurate Wage Statements | $492,000 |
| Failure to Indemnify Necessary Business Expenses | $0 |
| **TOTAL:** | **$5,483,826.03** |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 25-10508-DMG (Ex)** | Date | May 21, 2026 |
|---|---|---|---|

| Title | ***Marta Melendez v. Smurfit Kappa North America, LLC, et al.*** | Page | **11** of **11** |
|---|---|---|---|

The total exceeds the $5 million amount in controversy threshold under CAFA. Accordingly, the Court has subject matter jurisdiction over this action.[8] The Court therefore does not reach the issue of federal question jurisdiction under the LMRA.

**IV.**
**CONCLUSION**

In light of the foregoing, the Court **DENIES** Melendez's MTR.

**IT IS SO ORDERED.**

---

[8] Because the amount in controversy requirement is satisfied without accounting for any potential attorneys' fees, the Court need not address the parties' arguments as to the fees at stake.